**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

STUART LEE
ADC #113076                                                                                                    PLAINTIFF

V.                                            5:06V00272 JLH/JTR

CLEO SMITH, Administrator, RSVP,
Arkansas Department of Correction; and
DR. GWEN WRIGHT                                                                                           DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended partial disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, who is currently incarcerated at the Wrightsville Unit of the Arkansas Department of Correction, alleges in this § 1983 action that Defendants Cleo Smith and Dr. Gwen Wright violated his Fifth Amendment right against self incrimination by denying him readmission into the Reduction of Sexual Victimization Program ("RSVP"). According to Plaintiff, he was not allowed to participate in this program because he refused to admit to criminal conduct for which he had not been convicted.[1] *See* docket entries #2, #5, and #24.

Defendants have filed a Motion for Summary Judgment, a Supporting Brief, and a Statement of Indisputable Material Facts. *See* docket entries #50, #51, and #52. Plaintiff has filed a Response, a Supporting Brief, and a Statement of Disputable Material Facts. *See* docket entries #60, #61, and

---

[1] The Court has previously dismissed all other claims asserted by Plaintiff. *See* docket entries #29, #32, #56, and #58.

#62. For the reasons set forth below, the Court recommends that Defendants' Motion for Summary Judgment be granted, and that this case be dismissed, with prejudice.[2]

## II. Factual Allegations[3]

On May 13, 1998, Plaintiff pled guilty to one count of raping his minor step-daughter and was sentenced to fifteen years in prison. *See* docket entries #51 and #62. Plaintiff can only become eligible for parole if he completes the RSVP, which is a twelve-month residential therapy program designed to reduce recidivism for sex offenders. *Id.*

After being admitted into the RSVP on July 6, 2001, Plaintiff signed a wavier form acknowledging that he could be prosecuted for any admitted criminal conduct. *Id; see also* docket entry #51, Ex. 3. On June 5, 2002, one month short of completing the RSVP, Plaintiff was removed from the program. The reason given for his removal was his repeated refusals to demonstrate any empathy for his victim. *See* docket entry #51.

While Plaintiff admits that he has no empathy for his victim (*see* docket entry #51, Ex. 4, and docket entry #62), he contends that the real reasons Defendants removed him from the RSVP were: ( 1) his refusal to admit to uncharged criminal conduct involving previously dismissed rape counts;

---

[2] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file" that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

[3] Unless otherwise stated, the following factual allegations are undisputed.

and (2) retaliation for his filing a grievance that resulted in the termination of an RSVP employee.[4] *See* docket entry #62.

In August of 2005, Plaintiff requested readmission into the RSVP, with the conditions that he receive: (1) credit for the eleven months he previously served in the program; (2) a guarantee that he be allowed to complete the program in thirty days; and (3) monetary compensation for the time he was denied readmission. *See* docket entry #51 at Exs. 3, 4, and 9, and docket entry #62. Defendant Cleo Smith, who is the RSVP program director, explained to Plaintiff that he could not be given the requested eleven months of credit because the RSVP was using a substantially different "treatment module" than the one used when Plaintiff was in the program in 2002.[5] *Id.* Thus, if Plaintiff wished to reenter the RSVP, he would be required to start over and complete all twelve months of the program. *Id.* Plaintiff declined readmission under those conditions. *Id.*

In his sworn affidavit, Defendant Smith states that his decision to deny Plaintiff readmission into RSVP was not influenced by Plaintiff's refusal to admit to criminal acts for which he had not been convicted. *See* docket entry #51, Ex. 3. Defendant Smith further states that Plaintiff may currently reenter the RSVP, as soon as a bed becomes available, if he is willing to begin the program anew. *Id.*

In his sworn Affidavit, Plaintiff *admits* that Defendant Dr. Gwen Wright (the former RSVP

---

[4] The Court has previously ruled that any claims regarding Plaintiff's removal from the RSVP in 2002 are barred by the statute of limitations. Thus, Plaintiff's only remaining viable claims involve Defendants' denial of his requests for *readmission* into the RSVP *after October 17, 2003*. *See* docket entries #29 and #32. Accordingly, the factual dispute surrounding the reason Plaintiff was removed from the RSVP on June 5, 2002, is not material to the resolution of Defendants' pending Motion for Summary Judgment.

[5] In 2002, the RSVP used the "Bradshaw/Carnes" treatment module. In 2005, the RSVP used the "therapeutic community treatment module along with cognitive therapy behavior program." *See* docket entry #51, Ex. 3 at p 3.

clinical director) never questioned him about any criminal acts for which he had not been convicted. *See* docket entry #51, Ex. 4.  Instead, in his Statement of Disputed Facts, he states his entirely subjective and factually unsupported opinion that Defendant Wright entered into a conspiracy with Defendant Smith and other ADC officials to deny him readmission into the RSVP and "bury him in ADC bureaucracy to cover up fraud." *See* docket entry #62, at ¶ 12.[6]

### III.  Discussion

In their Motion for Summary Judgment, Defendants assert the following arguments:  (1) Plaintiff has failed to exhaust his administrative remedies against separate Defendant Wright;[7] (2) Plaintiff's request for monetary damages is barred by the physical injury rule in 42 U.S.C. § 1997e[8](e); (3) Defendants are entitled to sovereign immunity;[9] (4) Defendants are entitled to

---

[6]  On January 30, 2008, the Court advised Plaintiff that: (1) his Response to Defendants' Motion for Summary Judgment must be supported by "affidavits, prison records, or other evidence establishing that there is a genuine issue of material fact"; and (2) the Court will not sift through the file to find support for Plaintiff's factual contentions.  *See* docket entry #54.

[7]  This argument could have been raised earlier in a Motion to Dismiss.  Additionally, Defendants have not addressed Plaintiff's contention that they have seized his documents and otherwise prevented him from exhausting his administrative remedies. *See Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (explaining that "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies").  Finally, even if Defendants' prevailed on this argument, it would result in a dismissal, without prejudice, that would apply only to separate Defendant Wright.  *See Jones v. Bock*, 127 S.Ct. 910 (2007).

[8] This appears to be a boilerplate argument that has not been tailored to the specific facts in this case.  The physical injury rule provides that a prisoner may not recover compensatory damages for "mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  However, the Eighth Circuit has clarified that the physical injury rule *does not* prevent an inmate from receiving nominal damages, punitive damages, injunctive relief, and declaratory relief – all of which has been requested by Plaintiff in this case.  *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), *cert. denied*, 544 U.S. 1061 (2005).

[9]  This is another boilerplate argument that has not been tailored to the specific facts in this case.  More importantly, this argument was thoroughly addressed and *unequivocally rejected* by the

qualified immunity;[10] and (5) Plaintiff has failed to state a viable Fifth Amendment claim.[11]  *See* docket entry #52.  Because the Court concludes that Plaintiff's Fifth Amendment claim fails, as a matter of law, it need not address Defendants' other arguments.

The Fifth Amendment provides, in pertinent part, that: "No person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend V.  This important constitutional protection "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."  *Minnesota v. Murphy,* 465 U.S. 420, 426 (1984).  However, the Fifth Amendment prohibits "only self-incrimination obtained by a genuine *compulsion* of testimony."  *United States v. Washington,* 431 U.S. 181, 187 (1977) (emphasis added).  What constitutes sufficient compulsion, in the prison context, has proven to be a nettlesome issue for the Courts.

---

Court in its April 24, 2007 Partial Recommended Disposition.  *See* docket entry #29 at 6; *see also* docket entry #32 (May 11, 2007 Order adopting the April 24, 2007 Partial Recommended Disposition).

[10]  This argument is not worth addressing for two reasons.  First, qualified immunity applies only to a request for damages.  In this case, Plaintiff primarily is seeking injunctive relief.  *See Wertish v. Krueger,* 433 F.3d 1062, 1066 (8th Cir. 2006); *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994).  Second, and more importantly, the salient issue in the qualified immunity analysis is whether the defendants violated a constitutional right that was *clearly established* at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  In their Brief, Defendants hardly address this latter point.

[11]As will be discussed later, the Court has – *on two separate occasions* – questioned whether Plaintiff has stated a viable Fifth Amendment claim pursuant to the Court's plurality decision in *McKune v. Lile,* 536 U.S. 24 (2002), and specifically requested Defendants' counsel to address the issues raised by the Court in *McKune*.  For unknown reasons, Defendants' Brief in support of their Motion for Summary Judgment does not mention *McKune* or its progeny, and cites outdated Eighth Circuit precedent to support their position.

In *McKune v. Lile*, 536 U.S. 24, 30-32 (2002) (4-1-4 plurality opinion), a state prisoner was removed from a sexual treatment program because he refused to admit to uncharged criminal conduct, without being guaranteed immunity. Prison officials then transferred him to a higher security facility and reduced his privileges.[12] *Id.* The Court could not reach a majority opinion on the appropriate test for determining, in a prison setting, what conduct constitutes compulsion sufficient to allow a prisoner to invoke his Fifth Amendment right against self-incrimination.[13] *Id.* Instead, in a plurality decision, five Justices agreed that the specific consequences suffered by the

---

[12] Specifically, the prisoner's "visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, access to a personal television, and other privileges [were] curtailed." *McKune*, 536 U.S. at 31.

[13] Justices Kennedy, Rehnquist, Scalia, and Thomas decided that the question could be answered by adopting the due process "atypical and significant hardship" test announced in *Sandin v. Conner*, 515 U.S. 472 (1995). *McKune*, 536 U.S. at 37-42. In other words, these four Justices concluded that there is sufficient compulsion to implicate a prisoner's Fifth Amendment right against self-incrimination only if the consequences constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* Because the consequences suffered by the prisoner in *McKune* (*i.e.*, the loss of certain privileges and a transfer to higher security prison) did not meet the *Sandin* test, these four Justices concluded that the prisoner's right against self-incrimination was not infringed when he was removed from the sexual treatment program.

Justice O'Connor concurred with the result but not the reasoning. *Id.* at 48-54. She concluded (as did the four dissenting Justices) that the *Sandin* due process test was not the proper analysis because prisoners' Fifth Amendment self-incrimination rights are *broader* than their due process rights. *Id.* However, she declined to articulate a different test and, instead, concluded that the penalties suffered by the prisoner in *McKune* did not amount to compulsion under "any reasonable test." *Id.* at 54.

It is well settled that, if no single rationale explains the result of a divided United States Supreme Court, the holding is limited to the "position taken by those Members who concurred in the judgment on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Courts interpreting *McKune* agree that Justice O'Connor's concurring opinion is the narrowest ground. *See, e.g., United States v. Antelope*, 395 F.3d 1128, 1133 (9th Cir. 2005); *Ainsworth v. Stanley*, 317 F.3d 1, 3-4 (10th Cir. 2002); *Searcy v. Simmons*, 299 F.3d 1220, 1225 (2002). Thus, *McKune* does *not* stand for the proposition that the *Sandin* test should be applied when determining if adverse consequences suffered by a prisoner amount to compulsion prohibited by the Fifth Amendment. Instead, *McKune* is limited to the facts presented, *i.e.*, the loss of privileges and a transfer to a higher security prison do *not* amount to compulsion prohibited by the Fifth Amendment.

prisoner in that case did not rise to the necessary level of compulsion sufficient to allow prisoners to assert a claim under the Fifth Amendment. *Id.* In reaching this conclusion, four Justices clarified that the result might be different if the prisoner's removal from the program "affected his eligibility for <u>parole</u> or good time credits." *Id.* at 38 (emphasis added).

The Eighth Circuit has not squarely addressed the question presented in this case: Does a prisoner's loss of the eligibility for *parole* constitute sufficient compulsion to allow him to invoke his Fifth Amendment right against self-incrimination.[14] However, other Circuit Courts have held that the loss of eligibility for parole does *not* constitute compulsion sufficient to invoke a prisoner's Fifth Amendment right against self-incrimination. *Ainsworth v. Stanley*, 317 F.3d 1 (1st Cir. 2002), *cert. denied*, 538 U.S. 999 (2003); *Thorpe v. Grillo*, Case No. 00-3171, 2003 WL 22477890 (3rd Cir. Oct. 31, 2003) (unpublished opinion); *Carroll v. Simmons*, Case No. 03-3236, 2004 WL 206329 (10th Cir. Feb. 4, 2004) (unpublished opinion). Arguably, each of these Circuit Court decisions contain factual nuisances that might limit their holdings if applied to the facts in this case. For

---

[14] In *Entzi v. Redmann*, 485 F.3d 998, 1000-01 (8th Cir. 2007), *petition for cert. pending* (U.S. Jan. 29, 2008) (07-8873) a prisoner lost a year of *good time credits* when he was removed from a sexual treatment program for refusing to admit to criminal conduct for which he had been convicted but was still challenging on collateral review. The Court concluded that such a loss of good time credits did not amount to unconstitutional compulsion under the Fifth Amendment. *Id.* at 1004. The Court also held that, even if the prisoner had stated a viable Fifth Amendment self-incrimination claim: (1) he would have to raise it in a habeas action, rather than a § 1983 action, because a result in his favor would necessarily affect the length of his sentence (*Heck v. Humphrey,* 512 U.S. 477 (1994)); and (2) he could not recover monetary damages because no incriminating statements were ever used against him in a criminal case and there was no "powerful showing" that exclusion of any such evidence and/or the restoration of good time credits would be an inadequate remedy (*Chavez v. Martinez*, 538 U.S. 760 (2003) (plurality decision)). *Id.* at 1003-04.

In *Munson v. Norris,* 435 F.3d 877, 78-79 (8th Cir. 2006), a prisoner alleged that he lost his eligibility for *parole* when he was removed from the RSVP for refusing to admit to unconvicted conduct. However, the Court was not required to decide if the prisoner had stated a viable self-incrimination claim because he sued the wrong defendants. *Id.* at 880.

example, in some of the cases, the failure to complete the treatment program resulted in a prisoner having a reduced likelihood of parole, instead of being deemed ineligible for parole. In other cases, the prisoner refused to admit to criminal conduct for which he had been convicted but was still being challenged on appeal or in a pending habeas action. *Id.*

After carefully reviewing the Parties' motion papers, the Court concludes that it is not required to reach the merits of Plaintiff's claim that Defendants have violated his Fifth Amendment rights because he has failed to come forward with *any evidence* to substantiate his claim. As previously discussed, Plaintiff has failed to present *any* evidence to substantiate his claim that he was denied readmission into the RSVP because he refused to admit to dismissed rape counts and possibly other uncharged criminal conduct.[15] Instead, the unrefuted evidence is that Plaintiff declined Defendant Smith's offers for readmission into the RSVP because he does not want to begin the revised RSVP anew, and spend twelve months in the program. Furthermore, Plaintiff *admitted* in his Affidavit that Defendant Wright never questioned him about any criminal conduct for which he had not been convicted. *See* docket entry #51, Ex. 4. Likewise, Plaintiff has failed to come forward with any evidence demonstrating that Defendant Wright has denied any of his requests for readmission into RSVP. *See* January 30, 2008 Order (docket entry #54) (explaining to Plaintiff that

---

[15] In his Affidavit, Plaintiff states that, "it is my *contention* that I was denied readmission to the program" for "repeatedly refusing to provide details for crimes which I was not convicted." *See* docket entry #51, Ex. 4 (emphasis added). However, a party cannot create a genuine issue of material fact, sufficient to defeat summary judgment, merely by stating his subjective speculative opinions in an affidavit. *See* Fed. R. Civ. P. 56(e) (explaining that an affidavit opposing summary judgment must be made on personal knowledge, and show affirmatively that the affiant is competent to testify to matters stated therein); *Erickson v. Farmland Indus., Inc.,* 271 F.3d 718, 728 (8th Cir. 2001) (same); *Southward v. Missouri Dep't Corrs.*, Case No. 06-3735, 2007 WL 4531500 (8th Cir. Dec. 27, 2007) (unpublished opinion) (holding that an inmate could not defeat summary judgment in a § 1983 action by relying upon affidavits that were based upon speculation, rather than personal knowledge or expertise).

the Court will not sift through the record to find support for his claims, and, instead, his Response to the Motion for Summary Judgment must include supporting evidence or refer specifically to supporting evidence that has already been filed with the Court). Instead, he only makes the unsubstantiated claim that Defendant Wright conspired with other Defendants to deny him readmission and bury him in bureaucracy to cover up fraud. *See Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993) (affirming the dismissal of a prisoner's civil rights claim where he failed to present any evidence to support his conspiracy allegation); *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir. 1993) (same).

Finally, there is *no evidence* that Defendants are making Plaintiff start the program over, because he refused and is refusing to admit to criminal conduct for which he has not been convicted. Rather, the unrefuted evidence establishes that Plaintiff must start the RSVP anew because it now uses a treatment module that is substantially different from the one used when Plaintiff was in the program in 2002.

Accordingly, the Court concludes that Defendants are entitled to summary judgment, as a matter of law, on Plaintiff's claim that they violated his right against self-incrimination by denying him readmission in the RSVP.

### IV.  Conclusion

IT IS THEREFORE RECOMMENDED that:

1.     Defendants' Motion for Summary Judgment (docket entry #50) be GRANTED, and that this case be DISMISSED, WITH PREJUDICE.

2.	The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this 11th day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE